UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ELLIOT IRRIGATION COMPANY, INC., ) ) ) Plaintiff, ) ) vs. ) ) L.M. BERRY AND COMPANY, INC., ) et al., ) ) Defendants. ) | Civil Action No. CV-03-S-1864-S |

## MEMORANDUM OPINION

This action is before the court on plaintiff's "motion for order to remand"[1] and defendants' "motion to transfer."[2]

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Elliot Irrigation Company, Inc. ("Elliot") commenced suit against defendants L.M. Berry and Company ("L.M. Berry")[3] and BellSouth Advertising & Publishing Corporation ("BAPCO")[4] on June 17, 2003, in the Circuit Court of Jefferson County, Alabama.[5] Elliot's complaint asserted claims for breach of contract, negligence, wantonness, and fraud — all arising out of defendants' alleged failure to publish (or to correctly publish)

---

[1] Doc. no. 6.

[2] Doc. no. 7.

[3] Identified in plaintiff's complaint as "L.M. Berry and Company, Inc." *See* doc. no. 1 (Complaint, appended to Notice of Removal).

[4] Identified in plaintiff's complaint as "BellSouth Advertising and Publishing Corporation." *See id.* Elliot alleges that L.M. Berry is a subsidiary of BAPCO. *See id.* at ¶ 2. However, both L.M. Berry and BAPCO deny that relationship. *See* doc. no. 3 (Answer of L.M. Berry) at ¶ 2; doc. no. 4 (Answer of BAPCO) at ¶ 2.

[5] *See* doc. no. 1 (Complaint, appended to Notice of Removal).

advertisement listings for Elliot's two subsidiaries, Elliot Irrigation Company ("Elliot Irrigation") and Nitor Landscape Lighting Company ("Nitor"), in the "BellSouth REAL Yellow Pages" ("Yellow Pages").[6] In its *ad damnum* clause, Elliot demanded "Seventy-Five Thousand and 00/100 Dollars ($75,000) plus interest, punitive damages, costs associated with this matter and such other and further remedies, awards and relief as this Honorable Court deems just."[7]

Defendants jointly removed the action to this court on July 21, 2003, based on diversity jurisdiction.[8] Defendants alleged complete diversity of citizenship, which is uncontested.[9] Defendants further alleged that the amount in controversy requirement was satisfied because Elliot asked for $75,000, plus punitive damages, thus elevating the amount in controversy above the $75,000 threshold requirement.[10] *See* 28 U.S.C. § 1332. Both defendants filed answers on July 28, 2003,[11] denying material allegations of the complaint, and asserting as an affirmative defense that any liability they might have would be limited by the parties' contract to the amount of charges for the allegedly wrongful advertising.[12] Additionally, in its answer, BAPCO filed a counterclaim against Elliot, asserting Elliot's own

---

[6] The Yellow Pages are an advertising and telephone directory, published by defendants.

[7] Doc. no. 1 (Complaint, appended to Notice of Removal).

[8] *See* doc. no. 1 (Notice of Removal) at ¶ 2.

[9] Plaintiff is an Alabama corporation, with its principal place of business in Alabama. Defendant BAPCO is a Georgia corporation, with its principal place of business in Georgia. Defendant L.M. Berry is a Georgia corporation with its principal place of business in Ohio. Thus, complete diversity of citizenship is satisfied. *See id.* at ¶ 6.

[10] *Id.* at ¶¶ 7-10.

[11] *See* doc. no. 3 (L.M. Berry's answer) and doc. no. 4 (BAPCO's answer).

[12] Doc. no. 3 at 5; doc. no. 4 at 6.

breach of contract arising out of the advertising agreement.[13] Elliot filed an answer to the counterclaim on August 19, 2003.[14]

## II. ELLIOT'S MOTION TO REMAND

Elliot filed a timely "motion for order to remand"[15] on August 19, 2003, asserting that diversity jurisdiction did not exist because the amount in controversy was not satisfied. According to Elliot, it had intended to demand damages of $75,000, *including* interest, punitive damages, costs, etc., rather than $75,000 *plus* the other items of damages. Elliot also asserted that compensatory damages were limited by contract to approximately fifteen thousand eight hundred dollars ($15,800), as stated in the seventh affirmative defense of both defendants, and that any punitive damages awarded must be in a reasonable ratio to the amount of compensatory damages awarded.[16]

"Jurisdictional facts are assessed on the basis of plaintiff's complaint *as of the time of removal.*" *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1097 n.13 (11th Cir. 1994) (emphasis in original) (citations omitted); *see also Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir.1983) ("Removability should be determined 'according to the plaintiff's pleading at the time of the petition for removal.'") (citations omitted); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir.1989) (same).

And though . . . the plaintiff after removal, by stipulation, by affidavit, or by

---

[13]Doc. no 4. at 6.
[14]Doc. no. 8.
[15]Doc. no. 6.
[16]Thus, Elliot's argument must naturally follow, any punitive damage award based a $15,800 compensatory damage award would be too small to satisfy the amount in controversy.

amendment of his pleadings, reduces the claim below the requisite [jurisdictional] amount [in controversy], this does not deprive the district court of jurisdiction.

Thus events occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached. ...

. . .

We think this well established rule is supported by ample reason. If the plaintiff could, no matter how *bona fide* his original claim in the state court, reduce the amount of his demand to defeat federal jurisdiction the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice. The claim, whether well or ill founded in fact, fixes the right of the defendant to remove, and the plaintiff ought not to be able to defeat that right and bring the cause back to state court at his election. If he does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 292-94, 58 S. Ct. 586, 592-93, 82 L. Ed. 845 (1938) (footnotes omitted).[17]

---

[17]The Eleventh Circuit cast doubt on the current validity of the last sentence of the foregoing quotation from *St. Paul* in *Burns,* saying:

> Some authority suggests that when plaintiff seeks less than the jurisdictional amount, the case cannot be removed as a matter of law — defendant gets no chance to prove jurisdiction. *See St. Paul*, 303 U.S. at 292, 58 S. Ct. at 592 ("If [plaintiff] does not desire to try his case in federal court, he may resort to the expedient of suing for less than the jurisdictional amount, and though he would justly be entitled to more, the defendant cannot remove"); *cf. Iowa City RY. v. Bacon*, 236 U.S. 305, 35 S. Ct. 357, 59 L. Ed. 591 (1915) (finding that when jurisdictional amount was $2,000 and plaintiff's damages were $10,000, but he requested only $1,990, defendant could not remove). But, we do not follow this absolute standard because these cases were decided when different rules about pleading damages (in general, much more strict) and about jurisdiction were in effect. We think we are not bound by these old cases, although they are decisions of the Supreme Court. But, these cases do support the fundamental principle that plaintiff is the master of his own claim.

*Burns*, 31 F.3d at 1096 n.6. Additionally, § 1447(c) of the removal statute was amended in 1988 to read, in pertinent part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded". *See* 28 U.S.C. § 1447(c). One district court has held that this amendment abrogated the rule enunciated above in *St. Paul*. *See Bailey v. Wal-Mart Stores, Inc.*, 981 F. Supp. 1415, 1416-17 (N.D. Ala. 1997) (stating, that "if such changes [in a plaintiff's claim] result in a loss

The Eleventh Circuit has also held that, "when determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered, unless it is apparent to a legal certainty that such cannot be recovered." *Holly Equipment Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) (citations omitted). Punitive damages are recoverable in actions for fraud and wantonness under Alabama law, the state law under which Elliot filed its claims. *See* Ala. Code § 6-11-20(a) (1975) (Supp. 1993); *Third Generation, Inc. v. Wilson*, 668 So. 2d 518, 521 (Ala. 1995); *Kmart Corp. v. Peak*, 757 So. 2d 1138, 1145 (Ala. 1999). Thus, the amount of any prospective punitive damage award must be considered when determining the jurisdictional amount in controversy in this case.

Elliot asked for "Seventy-Five Thousand and 00/100 Dollars ($75,000) *plus* interest, punitive damages, [and] costs . . . ."[18] Elliot did not specify how much it seeks in punitive damages. However, any award of punitive damages, even if only one penny, would satisfy the amount in controversy when added to the $75,000 in compensatory damages Elliot demanded. Thus, the amount in controversy was satisfied based on the allegations in Elliot's complaint at the time of removal, and Elliot cannot now reduce the jurisdictional amount to

---

of subject matter jurisdiction, no discretion remains in the federal court to retain jurisdiction, and that remand becomes automatic."). However, the Eleventh Circuit has since firmly disagreed with this point of view, stating,

> [w]e join our sister Circuits and conclude the amendments to § 1447(c) did not alter the fact that, in this case, the district court must determine whether it had subject matter jurisdiction at the time of removal. That is, events occurring after removal which may reduce the damages recoverable below the amount in controversy requirement do not oust the district court's jurisdiction.

*Poore v. American-Amicable Life Insurance Co.*, 218 F.3d 1287, 1290-91 (11th Cir. 2000).

[18]Doc. no. 1 (Complaint, appended to Notice of Removal) (emphasis supplied).

destroy diversity jurisdiction by substituting the word "including" for the word "plus" in its *ad damnum* clause.

Elliot also alleges the amount of any damages recoverable in this case is limited by contract to approximately $15,800, because defendants asserted the contractual limitation as an affirmative defense. Elliot's argument again lacks merit, because the amount in controversy must be determined from the face of the plaintiff's complaint, not from any affirmative defenses. *See St. Paul,* 303 U.S. at 291-93, 58 S. Ct. at 591-92; *Anderson v. Moorer,* 372 F.2d 747, 750 (5th Cir. 1967).[19] In *St. Paul,* the Supreme Court clearly stated that,

> the status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal, since the defendant must file his petition before the time for answer or forever lose his right to remove. Of course, if, upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount, removal will be futile and remand will follow. But the fact that it appears from the face of the complaint that the defendant has a valid defense, if asserted, to all or a portion of the claim, or the circumstance that the rulings of the district court after removal reduce the amount recoverable below the jurisdictional requirement, will not justify remand.

*St. Paul,* 303 U.S. at 291-92, 58 S. Ct. at 591-92 (footnotes omitted). Similarly, in *Anderson,* the former Fifth Circuit held that an affirmative defense of *res judicata* did not destroy federal jurisdiction, stating, "the probability of a valid factual defense (here, a defense of res judicata) is not sufficient to diminish the amount in controversy and to oust the court of

---

[19] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

jurisdiction, even if that defense appears on the face of the complaint." *Anderson,* 372 F.2d at 750. Thus, the contractual limitation on liability asserted as an affirmative defense cannot operate to reduce the jurisdictional amount and destroy diversity jurisdiction when, as stated above, Elliot's complaint stated a claim in excess of the amount in controversy requirements.

### III. DEFENDANTS' MOTION TO TRANSFER VENUE

Defendants jointly filed a motion to transfer this action to the United States District Court for the Northern District of Georgia. Defendants assert that any agreement they had with Elliot to publish an advertisement listing was governed by the Advertising Order ("AO") that all parties agreed upon, which contained the following forum selection clause:

> This AO, *if accepted by us*, and any associated forms are our entire agreement with you and shall be governed by the laws of the State of Georgia. *Any litigation arising hereunder shall be filed only in the Federal District Court for the Northern District of Georgia or the Superior Court of DeKalb County, Georgia*, and you hereby consent to the jurisdiction of such courts.[20]

In response, Elliot claims that the forum selection clause is not enforceable because one of the ordered advertisements was never published, and refers to another provision of the AO in support of the argument: *i.e.,* "[y]our offer, as set out in this AO, shall be considered accepted by us at our executive offices *upon publication of your advertising.*"[21] The advertising for Nitor allegedly was never published in the Yellow Pages.[22] Thus, Elliot contends, the AO was never accepted by defendants, and the forum selection clause is not

---

[20] *See* doc. no. 6 (Plaintiff's Motion for Order to Remand) at Exhibit B ¶ 14; doc. no. 7 (Defendants' Motion to Transfer) at Exhibit B ¶ 14 (emphasis supplied).

[21] *See* doc. no. 6 (Plaintiff's Motion for Order to Remand) at Exhibit B ¶ 2; doc. no. 7 (Defendants' Motion to Transfer) at Exhibit B ¶ 2 (emphasis supplied).

[22] *See* doc. no. 10 (Plaintiff's Response to Motion to Transfer) at Exhibit 1 ¶ 3.

enforceable. Elliot further asserts that the interests of justice and the convenience of the parties and witnesses in this action would be better served by maintaining venue in the Alabama federal courts. *See* 28 U.S.C. § 1404(a) (stating that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.").

Choice-of-forum clauses generally are enforceable under the "usual rules governing the enforcement of contracts in general." *P & S Business Machines, Inc. v. Canon U.S.A., Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (citing *In re Ricoh Corp.*, 870 F.2d 570, 573-74 (11th Cir. 1989)). Accordingly, courts faced with determining the validity of such clauses will consider whether the clause was "freely and fairly negotiated by experienced professionals," and whether there was any indication of fraud, duress, or misrepresentation when entering into the contract containing the clause. *See In re Ricoh Corp.*, 870 F.2d at 573-74. If the forum selection clause is valid, the party opposing a motion for change of venue on the basis of such a clause "bears the burden of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989); *see also Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33, 108 S. Ct. 2239, 2245, 101 L. Ed. 2d 22 (1988) ("[E]nforcement of valid forum selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.") (Kennedy, J., concurring); *The Stewart Organization, Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1075 (11th Cir. 1987) (en banc) (observing that, in the absence of proof that "it would be unjust to honor a forum

selection clause that [the non-moving party] has freely given, 'the interest of justice' requires that the non-movant be held to its promise") (Tjoflat, J., concurring) (quoting 28 U.S.C. § 1404(a)). In fact, the policy supporting enforcement of forum selection clauses is so strong that "the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors." *In re Ricoh Corp.*, 870 F.2d at 573.

The forum selection clause in the AO is valid and enforceable. There is no indication that the agreement was not freely and fairly entered into, and neither party has alleged any fraud, duress, or other misconduct related to the formation of the agreement.[23] Elliot alleges that the clause is unenforceable because, by its terms, the AO was never accepted by defendants due to defendants' failure to publish any listing for Nitor. However, one of the claims in Elliot's complaint is for breach of contract, based on defendants' alleged failure to carry out the terms of the AO. Elliot cannot, on the one hand, allege breach of the AO, and on the other, allege that the AO was never fully accepted.

Moreover, a listing *was* published for Elliot Irrigation, one of the Elliot subsidiaries covered by the AO.[24] Only one AO was entered into between Elliot and defendants,[25] and that AO, by its terms, was accepted when defendants published the listing for Elliot

---

[23]Elliot does allege the defendants' fraud, but not in entering into the AO. The fraud alleged is due to defendants' conduct after the order was placed.

[24]*See* doc. no. 1 (Complaint, appended to Notice of Removal) at ¶ 6 ("Defendants *published* incorrect listings for Elliot Irrigation in the Yellow Pages.") (emphasis supplied).

[25]Both parties refer to the AO in the singular. *See, e.g.*, doc. no. 1 (Complaint, appended to Notice of Removal) at ¶ 4 ("Elliot entered into *a* contract for the services of L.M. Berry . . . .") (emphasis supplied); doc. no. 7 (Defendant's Motion to Transfer) at ¶ 2(b) ("*an* Advertising Order was executed for the publication of plaintiff's advertising in this directory") (emphasis supplied).

Irrigation. Defendants' failure to publish a listing for Nitor does not negate their acceptance of the AO, when the AO covered publications for both Nitor and Elliot Irrigation.

Elliot also alleges that, even if the clause is generally valid, it does not govern forum selection for the entire action because the action includes wantonness and fraud claims arising out of defendants' conduct *after* defendants either incorrectly published or failed to publish the advertising listings. However, the forum selection clause states that it governs "[a]ny litigation arising hereunder," and even Elliot's claims for fraud and wantonness represent litigation arising under the AO. The wantonness claim involves defendants' alleged denial of responsibility for their errors and/or omissions, and the fraud claim involves defendants' alleged representations that they would correct their errors and/or omissions and that they would accordingly adjust the amount Elliot owed them. In the count for wantonness in Elliot's complaint, Elliot states, "[d]efendants knew or should have known of the errors if it [sic] had followed its [sic] procedures."[26] In its fraud count, Elliot states, "[d]efendants knew or should have known of the errors prior to printing the Yellow Pages."[27] Both counts thus arise from the same errors and/or omissions that form the basis of the alleged breach of the AO. Because both the fraud and the wantonness counts constitute "litigation arising []under" the AO, the forum selection clause validly applies to those claims.

Because the forum selection clause in the AO is valid, it will govern unless Elliot can show that forcing it to litigate in the Northern District of Georgia, the forum designated in

---

[26] Doc. no. 1 (Complaint, appended to Notice of Removal) at ¶ 27.
[27] Doc. no. 1 (Complaint, appended to Notice of Removal) at ¶ 33.

the clause, would cause such overwhelming inconvenience to it and to the witnesses involved that the policy behind enforcing the forum selection clause should be overridden. *See In re Ricoh Corp.*, 870 F.2d at 573. Elliot contends that litigation in Georgia would be too inconvenient because all witnesses for both parties reside in Alabama, and because it is a citizen of, and does business in, Alabama. Elliot further alleges that litigation in Alabama would *not* be too inconvenient for defendants because defendants have offices in Jefferson County, Alabama. However, both defendants are Georgia corporations, and defendant BAPCO has its principal place of business in Georgia, so Georgia is a convenient forum for defendants.

The court must weigh the parties' competing interests. The court concludes that, because Alabama and Georgia are neighboring states, any inconvenience suffered by the Alabama litigants and witnesses would not be great enough to outweigh the interests in enforcing the forum selection clause. *See P & S Business Machines*, 331 F.3d at 808 (holding that a transfer of venue from Alabama to California would not cause enough inconvenience to override enforcement of a forum selection clause); *In re Ricoh Corp.*, 870 F.2d at 573-74 (transferring venue from an Alabama federal court to a New York federal court). Therefore, the forum selection clause in the AO should be enforced, and this case should be transferred to the United States District Court for the Northern District of Georgia.

## IV. CONCLUSION

In consideration of the foregoing, plaintiff's motion to remand is due to be denied, and defendants' motion to transfer venue is due to be granted. This action should be transferred

to the United States District Court for the Northern District of Georgia. An appropriate order will be entered contemporaneously herewith.

DONE this **12th** day of September, 2003.

_____
United States District Judge